## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLEN KELLY, | : | CIVIL NO. 1:12-CV-1245 |
| | : | |
| Plaintiff, | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| FACILITY MANAGER ERIC | : | |
| BUSH, et al., | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

In the Prison Litigation Reform Act, Congress established a series of procedures relating to prisoner civil litigation in federal court, procedures "designed to filter out the bad claims and facilitate consideration of the good." Jones v. Bock, 549 U.S. 199, 204 ( 2007).  One critical component of these reforms calls upon federal courts to perform a gatekeeping function with respect to *pro se* inmates who repeatedly seek leave to proceed *in forma pauperis* while filing frivolous claims.  As part of this statutorily mandated process, we are obliged to screen civil complaints lodged by *pro se* litigants who wish to proceed *in forma pauperis*, deny such leave to prisoners who have on three or more prior occasions filed frivolous or meritless

claims in federal court, and dismiss these inmate complaints, unless the inmate alleges facts showing that he is in imminent damage of serious bodily harm. 28 U.S.C. §1915(g).

In the instant case, we are now called upon, once again, to perform this function, a function which is an integral part of these Congressional "reforms designed to filter out the bad claims and facilitate consideration of the good" in this field Jones v. Bock, 549 U.S. 199, 204( 2007). Upon consideration of this case, we conclude that the plaintiff, Allen Kelly, was at the time of the filing of this complaint a "prisoner [who] has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g). We further conclude that Kelly cannot credibly allege that he is in imminent danger of serious bodily harm as a result of the acts alleged in this complaint. Therefore, consistent with §1915(g)'s mandate, we are compelled to recommend that "[i]n no event sh[ould] [this] prisoner [be authorized to continue to] bring [this] civil action," *in forma pauperis*. 28 U.S.C. § 1915(g). Accordingly, for the reasons set forth below, it is recommended that Kelly be denied further leave to proceed *in forma pauperis*, and this complaint should be dismissed.

## II.   Statement of Facts and of the Case

### A.   Allen Kelly's Litigation History

The plaintiff, Allen Kelly, is a state prisoner and a prodigious, if prodigiously unsuccessful, federal court litigant.  Indeed, over the past ten years Kelly has had numerous civil actions dismissed by this Court as frivolous.

The history of repeated, frivolous and meritless litigation in federal court by this plaintiff began at least in April of 2002, when Kelly filed a complaint in the case of  Kelly v. York County Prison, No. 4:02-CV-700 (M.D. Pa.).  On May 3, 2002, the district court dismissed this civil action as frivolous.   Kelly v. York County Prison, No. 4:02-CV-700 (M.D. Pa.).  (Doc. 6.)  Kelly did not appeal the dismissal of this action as frivolous.

On September 30, 2008, Kelly filed a second civil action in the case of Kelly v. York County Prison, No. 4:08-CV-1813 (M.D. Pa.).  Like his initial 2002 lawsuit, this action was dismissed by the district court which found Kelly's complaint to be frivolous. Kelly v. York County Prison, No. 4:08-CV-1813 (Doc. 9.) Kelly appealed this dismissal order,  Kelly v. York County Prison, No. 4:08-CV-1813, (Doc. 12.), but his appeal of this case was dismissed by the court of appeals, Kelly v. York County Prison, No. 4:08-CV-1813, (Doc. 16.), and on June 16, 2010 this case was closed by

the appellate court with the issuance of its mandate dismissing this appeal pursuant to 28 U.S.C. § 1915(e)(2)(B)(i).[1] <u>Kelly v. York County Prison</u>, No. 4:08-CV-1813. (Doc. 21.)

While this action was pending, Kelly filed a third lawsuit in the case of <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027, on November 6, 2008. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027 (M.D. Pa.). (Doc. 1.)  On January 14, 2009, upon a screening review of this, Kelly's third civil complaint, the district court dismissed this action for failure to state a claim upon which relief could be granted. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 8.)  Kelly appealed this dismissal. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 9.)

On August 31, 2009, the court of appeals entered an opinion and order in this case, which affirmed the district court's dismissal of the majority of Kelly's claims, but remanded the case to the district court for further consideration of a retaliation claim made by Kelly. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 14.)

---

[1]28 U.S.C. § 1915(e)(2)(B)(I) provides that; "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal, . . . is frivolous or malicious."  Thus the appellate court ruling was tantamount to a declaration that this action was also frivolous.

On remand, the district court directed Kelly to file an amended complaint articulating this claim, <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027, (Doc. 20.), which was filed by Kelly on December 23, 2009. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 21.) On August 17, 2010, the district court then entered an opinion and order dismissing Kelly's amended complaint for failure to state a claim upon which relief can be granted, further finding that any " appeal from this Order will be deemed frivolous, without probable cause, and not taken in good faith." <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 29.) Kelly appealed this dismissal order, <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 32.), but his appeal was dismissed by the court of appeals on October 5, 2010. <u>Kelly v. York County Prison</u>, No. 4:08-CV-2027. (Doc. 34.)

Subsequently, on December 29, 2010, Kelly filed a fourth lawsuit, <u>Kelly v. Kline</u>, No. 1:10-CV-2658 (M.D. Pa.). On January 26, 2011, this fourth civil action filed by Kelly was dismissed by the court as frivolous. <u>Kelly v. Kline</u>, No. 1:10-CV-2658 (Doc. 10.) This dismissal constituted Kelly's "fourth strike," the fourth dismissal of a case brought by Kelly in federal court as frivolous. There is no record that Kelly ever appealed this "fourth strike" dismissal.

In fact, Kelly is well aware that he may no longer routinely seek leave to proceed *in forma pauperis* given his past history of frivolous filings. As a result of this longstanding history of pursuing frivolous litigation beginning last year we have twice denied Kelly leave to proceed *in forma pauperis* in other litigation. See Kelly v. Karnes, No. 10-2532, 2011 WL 5089819 (M.D.Pa. Sept. 1, 2011), Report and Recommendation Adopted, Kelly v. Karnes, No. 10-2532, 2011 WL 5117633 (M.D.Pa. October 25, 2011); Kelly v. Lebanon County Comm'rs, No. 11-1294, 2011 WL 745996 (M.D. Pa. Oct. 5, 2011), Report and Recommendation Adopted, Kelly v. Lebanon County Com'rs, No. 11-1294, 2012 WL 716038 (M.D. Pa. Mar. 5, 2012).

## B.   Kelly's Current Lawsuit

Undeterred, on June 29, 2012, Kelly filed yet another *pro se* complaint in which he seeks leave to proceed *in forma pauperis.* (Docs. 1 and 2.)  In this complaint Kelly alleges that in May 2012 the defendants, correctional officials at the State Correctional Institution Pine Grove, a prison located in Indiana County, Pennsylvania, failed to authorize the advance of sufficient funds to Kelly to allow him to pay for the costs of filing of a voluminous 97 page, 40-defendant complaint which Kelly was endeavoring to submit to the Commonwealth Court of Pennsylvania.(Id.) On the basis of this otherwise unadorned allegation, Kelly claimed that prison

officials were denying him access to the courts, and sought compensatory and punitive damages, as well as injunctive relief. (Doc. 1.)

Kelly also filed a document, styled "Motion for Imminent Danger," (Doc. 2.), which is, in reality, a motion for leave to proceed *in forma pauperis*. In this motion Kelly claims that he should be exempted from §1915's three-strike provision because he faces an "imminent danger." However, with respect to this claim of imminent danger, Kelly's motion simply parrots the language of the statute, and then recites that Kelly is housed in the Restricted Housing Unit due to a series of prior misconduct infractions. (Id., pp.1-4.) Kelly then levels allegations which plainly do not rise to the level of imminent danger of serious bodily injury, complaining that the Restricted Housing Unit is "extremely loud;" (id., ¶7) alleging that he suspects prison staff are interfering with his mail; (id. ¶8); and asserting that he is forced to write complaints with " a flexible three (3) inch pen," a compelled choice of writing instrument that Kelly condemns as "draconian," (id. ¶6.h).

## II. **DISCUSSION**

### A. **28 U.S.C. §1915(g)– The Legal Standard**

Under the Prison Litigation Reform Act, this Court has an affirmative duty to screen and review prisoner complaints filed by inmates like Kelly who seek leave to

proceed in forma pauperis. 28 U.S.C. §1915A.  One aspect of this review, a review

"designed to filter out the bad claims and facilitate consideration of the good," <u>Jones</u>

<u>v. Bock</u>,  549 U.S. 199, 204 ( 2007), entails ensuring that inmates who have abused

this privilege in the past are not permitted to persist in further *in forma pauperis*

litigation.  Towards that end, Congress enacted 28 U.S.C. §1915(g), which provides

in pertinent part that:

> In no event shall a prisoner bring a civil action or appeal a judgment in
> a civil action or proceeding under this section if the prisoner has, on 3
> or more prior occasions, while incarcerated or detained in any facility,
> brought an action or appeal in a court of the United States that was
> dismissed on the grounds that it is frivolous, malicious, or fails to state
> a claim upon which relief may be granted, unless the prisoner is under
> imminent danger of serious physical injury

28 U.S.C. § 1915(g).

Congress enacted 28 U.S.C. § 1915(g) with the express purpose of "[d]eterring

frivolous prisoner filings in the federal courts [a goal which] falls within the realm

of Congress' legitimate interests." <u>Abdul-Akbar v. McKelvie</u>, 239 F.3d 307, 318-19

(3d Cir. 2001).  With this goal in mind, it is well-settled that, "generally, a prisoner

may not be granted IFP [*in forma pauperis*] status if, on three or more occasions, he

brought an action that was dismissed as frivolous," <u>Brown v. City Of Philadelphia</u>,

331 F. App'x 898, 899, (3d Cir.2009), and inmates who attempt to bring such lawsuits *in forma pauperis* should have their complaints dismissed. Id.

In determining whether a particular inmate-plaintiff has had three prior dismissals, or "three strikes," under §1915(g), we look to the status of the plaintiff's prior litigation history at the time he filed the current lawsuit.  Thus, only dismissals which were actually ordered at the time of the filing of the instant case are counted towards a "three strike" assessment under  §1915(g), and "[a] dismissal does not qualify as a 'strike' for § 1915(g) purposes unless and until a litigant has exhausted or waived his or her appellate rights.  See Jennings v. Natrona County Det. Ctr. Med. Facility, 175 F.3d 775, 780 (10th Cir.1999); Adepegba v. Hammons, 103 F.3d 383, 387-88 (5th Cir.1996)." Lopez v. U.S. Dept. of Justice, 228 F. App'x 218 (3d Cir. 2007).  However, in assessing when a particular inmate plaintiff is subject to the gatekeeping provisions of  § 1915(g), it is also clear that "lawsuits dismissed as frivolous prior to the enactment of the PLRA count as 'strikes' under § 1915(g). See Adepegba v. Hammons, 103 F.3d 383 (5th Cir.1996); Abdul-Wadood v. Nathan, 91 F.3d 1023 (7th Cir.1996); Green v. Nottingham, 90 F.3d 415 (10th Cir.1996)." Keener v. Pennsylvania Bd. of Probation & Parole, 128 F.3d 143, 144 (3d Cir. 1997).

Once it is determined that an inmate-plaintiff has had at least three prior lawsuits dismissed "on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915(g) compels denial of *in forma pauperis* status and dismissal of *in forma pauperis* lawsuits unless the inmate alleges that he "is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g). With respect to this specific statutory exception, it is clear that:

> The clause "unless he is in imminent danger of serious physical injury" is an exception to the preclusive effect of the statute. But the exception is cast in the present tense, not in the past tense, and the word "is" in the exception refers back to the same point in time as the first clause, i.e., the time of filing. The statute contemplates that the "imminent danger" will exist contemporaneously with the bringing of the action. Someone whose danger has passed cannot reasonably be described as someone who "is" in danger, nor can that past danger reasonably be described as "imminent."

> Abdul-Akbar v. McKelvie, 239 F.3d at 313.

Moreover, in making this assessment of imminent danger:

> A court need not accept all allegations of injury made pursuant to § 1915(g). To the contrary, a court may discredit "factual claims of imminent danger that are 'clearly baseless,' i.e., allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.' " Gibbs v. Cross, 160 F.3d 962, 967 (3d Cir.1998) (citing Denton v. Hernandez, 504 U.S. 25, 33 (1992)). The Supreme Court has directed that, in assessing a case under 28 U.S.C. § 1915, we are not required to accept without question the truth of the plaintiff's allegations. See Denton, 504 U.S. at 32. Rather, we may be guided by

judicially noticeable facts in determining whether the allegations are baseless or wholly incredible.

Brown v. City Of Philadelphia, 331 F. App'x at 900.

**B.    Kelly's Complaint is Subject to §1915(g)'s Three Strikes Bar**

Judged against these legal standards, we find that, pursuant to 28 U.S.C. §1915(g), Kelly's current *in forma pauperis* complaint should be dismissed in its entirety.

At the outset, it is evident that the first prerequisite for the application of §1915(g)'s gatekeeping rule is fully met here, in that Kelly has had four prior federal lawsuits dismissed "on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(g).  Each of these dismissals pre-dated the filing of the instant lawsuit, and in each instance the order dismissing the case had become final prior to Kelly instituting the instant case. Lopez v. U.S. Dept. of Justice, 228 F. App'x 218 (3d Cir. 2007).  Thus, Kelly comes before this Court with "four strikes," and is plainly subject to § 1915(g)'s rule of preclusion.  Indeed, we have already concluded twice within the past eight months that Kelly is subject to § 1915(g)'s three strikes preclusion.  See Kelly v. Karnes, No. 10-2532, 2011 WL 5089819 (M.D.Pa. Sept. 1, 2011), Report and Recommendation Adopted, Kelly v. Karnes, No. 10-2532, 2011 WL 5117633 (M.D.Pa. October 25,

2011); <u>Kelly v. Lebanon County Com'rs</u>, No. 11-1294, 2011 WL 745996 (M.D. Pa. Oct. 5, 2011), <u>Report and Recommendation Adopted</u>, <u>Kelly v. Lebanon County Com'rs</u>, No. 11-1294, 2012 WL 716038 (M.D. Pa. Mar. 5, 2012).

Nor can Kelly avail himself of the "imminent danger" exception to § 1915(g)'s preclusive effect.  In making this imminent danger" assessment, "[a] court need not accept all allegations of injury made pursuant to § 1915(g).  To the contrary, a court may discredit 'factual claims of imminent danger that are "clearly baseless," i.e., allegations that are fantastic or delusional and rise to the level of the "irrational or wholly incredible." ' <u>Gibbs v. Cross</u>, 160 F.3d 962, 967 (3d Cir.1998) (citing <u>Denton v. Hernandez</u>, 504 U.S. 25, 33 (1992))." <u>Brown v. City Of Philadelphia</u>, 331 F. App'x at 900.  "Instead, ' "[i]mminent" dangers are [only] those dangers which are about to occur at any moment or are impending.' " <u>Meyers v. U.S. Dist. Court for the Middle Dist. of Pennsylvania</u>, 1:11-CV-0173, 2011 WL 766937 (M.D. Pa. Feb. 25, 2011). Therefore,   "[t]he 'imminent danger' exception to § 1915(g)'s 'three strikes' rule is available [solely] 'for genuine emergencies,' where 'time is pressing' and 'a threat ... is real and proximate.' <u>Lewis v. Sullivan</u>, 279 F.3d 526, 531 (7th Cir.2002)." <u>Banks v. Crockett</u>, CIV.A. 1:07-CV-1019, 2007 WL 1655504 (M.D. Pa. June 7, 2007).

Judged against these standards, Kelly has not adequately pleaded in his complaint and motion for leave to proceed *in forma pauperis* that he faces imminent

danger of serious bodily injury, and the nature of his claims simply do not lend themselves to credible assertions of imminent bodily harm.  Kelly's federal lawsuit simply complains that prison officials have not advanced him the funds to file a voluminous complaint in the Commonwealth Court.   Nothing in these allegations suggests in any fashion any sort of imminent risk of serious bodily injury.  Furthermore, while Kelly's motion for leave to proceed *in forma pauperis* recites in a talismanic fashion that the plaintiff faces an imminent risk of harm, it is well-settled that "[a] court need not accept all allegations of injury made pursuant to § 1915(g). To the contrary, a court may discredit 'factual claims of imminent danger that are "clearly baseless,"'" Brown v. City Of Philadelphia, 331 F. App'x at 900.   In this case, once we go past Kelly's characterization of his situation, the actual factual averments made by the plaintiff are pedestrian, and do not describe " 'genuine emergencies', where 'time is pressing' and 'a threat ... is real and proximate.' Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir.2002)." Banks v. Crockett, CIV.A. 1:07-CV-1019, 2007 WL 1655504 (M.D. Pa. June 7, 2007).

Quite the contrary, Kelly's motion simply parrots the language of the statute, and then recites that Kelly is housed in the Restricted Housing Unit due to a series of prior misconduct infractions.  (Id., pp.1-4.)  Kelly then levels allegations which plainly do not rise to the level of imminent danger of serious bodily injury,

13

complaining that the Restricted Housing Unit is "extremely loud," (<u>id.</u>, ¶7); alleging that he suspects prison staff are interfering with his mail, (<u>id</u>. ¶8); and asserting that he is forced to write with " a flexible three (3) inch pen," a writing instrument that Kelly condemns as "draconian." (<u>id</u>. ¶6.h).

In assessing these allegations under §1915(g)'s imminent danger standard, we note at the outset that the mere fact of Kelly's placement in the Restricted Housing Unit, standing alone, plainly does not present the type of imminent threat to inmate safety that would justify bypassing the gatekeeping function of §1915(g).  In fact, courts have repeatedly rejected claims that RHU conditions are so severe that they present cruelly dangerous circumstances.  <u>See</u> <u>Stewart v. Beard</u>, 411 F. App'x 117 (3d Cir. 2011)(RHU conditions do not constitute cruel and unusual punishment). Furthermore, recognizing that, " ' "[i]mminent" dangers are [only] those dangers which are about to occur at any moment or are impending,' "<u>Meyers v. U.S. Dist.</u> <u>Court for the Middle Dist. of Pennsylvania</u>, 1:11-CV-0173, 2011 WL 766937 (M.D. Pa. Feb. 25, 2011), we find that the problems that Kelly claims to experience with ambient noise in the RHU and poor mail service do not constitute an imminent danger of serious bodily injury that would justify foregoing application of the three strikes rule which otherwise so clearly applies here.  Finally, while we can appreciate the inconvenience of writing with "a flexible three (3) inch pen," we reject Kelly's

description of this writing instrument as "draconian," (id. ¶6.h.), and find that the alleged "dangers" caused by this pen are not the type of risks contemplated by Congress under the "imminent danger" exception to § 1915(g)'s 'three strikes' rule, an "exception [which] is available 'for genuine emergencies,' where 'time is pressing' and 'a threat ... is real and proximate.' Lewis v. Sullivan, 279 F.3d 526, 531 (7th Cir.2002)." Banks v. Crockett, CIV.A. 1:07-CV-1019, 2007 WL 1655504 (M.D. Pa. June 7, 2007).

In sum, all of the statutory prerequisites for imposition of §1915(g)'s bar against further *in forma pauperis* litigation by this *pro se* prisoner-plaintiff are fully met here. Therefore, consistent with §1915(g)'s statutory mandate, it is recommended that Kelly be denied further leave to proceed *in forma pauperis*, and this complaint should be dismissed in its entirety.

### C.   In the Alternative, This Case Should Be Dismissed or Transferred on Venue Grounds

Kelly's complaint also fails because venue does not lie in this district over the matters about which he complains. At bottom, this case is a federal civil rights action in which Kelly protests that prison officials in Indiana County, Pennsylvania are unreasonably restricting his access to state court. In such cases, where alleged

15

violations of the United States Constitution form the basis for the court's jurisdiction,

28 U.S.C. § 1391(b) defines the proper venue and provides that an action should:

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In this case, "a substantial part of the events or omissions giving rise to the claim occurred" in Indiana County, Pennsylvania, and it appears that the named defendants either reside in, or may be found in, Indiana County, Pennsylvania. Indiana County falls within the venue of the United States District Court for the Western District of Pennsylvania. See 28 U.S.C. § 118(c). Therefore, it appears evident from the plaintiff's complaint that venue over this matter lies in the United States District Court for the Western District of Pennsylvania.

While an objection to venue may be waived by a defendant, this court is permitted *sua sponte* to raise the issue of an apparent lack of venue, provided the court gives the plaintiff notice of its concerns and an opportunity to be heard on the issue. See e.g., Stjernholm v. Peterson, 83 F.3d 347, 349 (10th Cir. 1996)(" a district court may raise on its own motion an issue of defective venue or lack of personal

jurisdiction; but the court may not dismiss without first giving the parties an opportunity to present their views on the issue."); <u>Costlow v. Weeks</u>, 790 F.2d 1486, 1488 (9th Cir. 1986). Through this report and recommendation we are providing such notice to the plaintiff in this case.

When it appears that a case has been brought in the wrong venue, there are two potential remedies available to the court. First, the court may dismiss the action for lack of venue pursuant to 28 U.S.C. §1406, and Rule 12(b)(3) of the Federal Rules of Civil Procedure. However, the court may also, in the interests of justice, provide another form of relief, one which ensures that venue is proper without prejudicing the rights of any plaintiffs. Under 28 U.S.C. § 1406:

> The district court of a district in which is filed a case laying venue in the wrong . . . district shall dismiss, *or if it be in the interest of justice, transfer such case to any district . . . in which it could have been brought*.

28 U.S.C.A. § 1406(a)(emphasis added).

In this case, it is submitted that, if the court does not elect to dismiss this complaint pursuant to 28 U.S.C. §1915(g), then it should either dismiss this action for lack of venue or order this case transferred to the United States District Court for the

Western District of Pennsylvania for further proceedings.  See Burnett v. New York

Cent. R. Co., 380 U.S. 424, 430 (1965).[2]

### III.   Recommendation

Accordingly, for the foregoing reasons, pursuant to 28 U.S.C. § 1915(g), IT IS

RECOMMENDED that the plaintiff's motion for leave to further proceed *in forma*

*pauperis* be DENIED and that the plaintiff's *in forma pauperis* complaint be

dismissed.

In the alternative, since the complaint reveals that venue does not lie in this

district, and the plaintiff concedes in his motion requesting a transfer of this case that

venue is not proper here, it is recommended that the Court enter an order either

---

[2] Such a transfer order avoids any unintended prejudice to the plaintiff
which might flow from a dismissal of this action on venue grounds.  Addressing
the lack of venue in this fashion would not constitute a ruling on the merits of the
plaintiff's claims, thus assuring that the plaintiff can have his case heard on its
merits in the proper forum.  See, 18 Wright, Miller & Cooper Federal Practice and
Procedure, § 4436, at 338 (stating that "a dismissal for lack of jurisdiction or
improper venue does not operate as an adjudication upon the merits")
Furthermore, since an order transferring a case is not a dispositive final order in
that case, this proposed transfer is a matter which lies within the authority of either
the district court, or this court.  See, e.g., Berg v. Aetna Freight Lines, Inc., No.
07-1393, 2008 WL 2779294 (W.D. Pa. July 15, 2008); Market Transition Facility
of New Jersey v. Twena, 941 F. Supp. 462 (D.N.J. 1996). Thus, while a United
States Magistrate Judge could enter this order transferring the case, out of an
abundance of caution we are referring this matter to the district court with a
recommendation to dispose of the case in this fashion.

dismissing this matter for lack of venue or, pursuant to 28 U.S.C. § 1406, transferring

this matter to the United States District Court for the Western District of

Pennsylvania, which clearly has venue of the matters set forth in the complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 2nd day of July 2012.

**_S/MARTIN C. CARLSON_**
Martin C. Carlson
United States Magistrate Judge